Petitioner v. National Labor Relations Board Mr. Johnson for the petitioner, Mr. Cantworth for the respondent Please do. Please the court I'm Harry Johnson here to argue today for partitioner Concilium two things about this case leap out from the court detention First a severe conflict with title seven and second a Clear departure from the board's prior precedent in these areas without any reason of justification We have an overarching argument that covers both aspects of this case and that is simply this because The employees activity in this case, which was sprawling an epithet on an overtime sign-up sheet Posted on the employers official bulletin board as a threshold matter was not protected under the National Labor Relations Act Then the court in order to deny enforcement and reverse the board here doesn't need to get to the Atlantic steel balancing test Yes, you are you seem to have argued Throughout and again and certainly quite clearly in your reply brief that he was discharged for The act of defacement not for the content of his message. Is that right? well Defacement is certainly one reason but if you look at mr. Page and I've replied me if it was mr. Williams Italicized act of defacement that led to the disciplinary response That is certainly one of the main reasons that mr. Williams was discipline if he had defaced it but without The epithet had defaced it with No, right-thinking loyal Person who cares about his co-workers would sign up on those sheets and he defaced it Right. It is likely that It is likely that It would have because Simply speaking There are no comparators that anyone had ever gone up and defaced an official company document on the company's bulletin board where it struck out The header of the overtime and sign-up sheet You're even here seem to be very strongly the United Artists Theater Defacement doesn't matter what you're saying. It's the act of defacement It was what motivated the discharge here and they'd put up with the word when it was orally spoken by people They just with the act of defacement Well, I think the act of defacement was a primary motivator in this case. There is no question about that I also think if you look at the record in this case the Employer here did try and make some good-faith efforts under a zero-tolerance policy to tamp down on graffiti in the workplace Besides just this particular defacement It is clear though that under United Artists and I agree with you that the board there ruled that under no circumstances Would defacement be protected it goes on the lines of the vandalism cases where vandalism isn't protected Which is one of the three reasons why the conduct in this case isn't protected. One, vandalism Two, it took over the employer's bulletin board which belongs to the employer for its messaging and three, the venomous sexually demeaning epithet that was used At the end of the day even if you do get to the Atlantic steel balancing test Because of the nature of the conduct it's so egregious it is a venomous sexually demeaning epithet It is vandalism and it does take over the employer's bulletin board It would be vandalism even if it wasn't a sexually demeaning epithet As far as I understand your opening brief the first two headings are all about defacement Your reply brief says look it was the act of defacement That's the reason we discharged him none of which has anything to do with the epithet he used There is no question that defacement standing alone would be an independent reason versus a discharge And there's no question that it's one of the primary reasons if you look at the notice that was given to the employee though About his conduct and why the employer had a problem with it It does mention that it was harassing and the testimony by the Harmeson Everyone in the plant I mean this employer had a million-dollar jury verdict rendered against it for offensive Offensive gender workplace environment that It then that's the reason why I had the zero tolerance policy. There were also The board found That oral use of this phrase Was commonplace including by a supervisor Not denied As I read it And so that doesn't sound like a zero talent So that's what I'm trying to understand exactly is your argument a zero tolerance for defacing property a zero tolerance for writing epithets It's part of defacement or I understand your honor basically the employer had never allowed Defacement of this kind before number one of this kind just defacing of it just the face Yes Number two because the zero tolerance policy the employer did regard this as an escalation in the types of outfits that were used number three There is testimony in the record and the board didn't make any fact-finding to discredit any of this testimony That the decision-makers in this case These are the Williams never consciously allowed other supervisors for example to go on and use this term never consciously allowed Employees to get away with this term. The fact is that they testified Well, they see and know about a supervisor using this term for example, and then they go ahead and allow it I Evidence that there's some employees who testified the term was used employees use the term There's one there's some employees that say supervisors use the term but at the end of the day There was a good-faith attempt here to tamp down on the workplace culture and we think that goes right to the heart of the problem that the NLRA the board spin on the NLRA has in this case Because the repeated use of an epithet, of course under title 7 creates in a hostile work environment under the boards lodging in this case the repeated use of an epithet creates an excuse for more epithets and even in Escalation to get from a verbal epithet to a written epithet posted up on a board for 24 hours or even 48 hours And we think at the end of the record say anything about the use of the word the oral use of these In the presence of female employees No, there is nothing in the record affirmatively on that In fact that most of the discussions were apparently on the radio This particular maintenance department appears to have all male employees Some of the male employees were offended your honor, which is what brought this to the employers intention In fact, one of the employees broke down during the interview process and started crying Yes, it was one of those people The record is it was in heavily trafficked openly accessible Area of the plant next to a time clock next to an official bulletin Did you put on evidence that women were in this area There is evidence in the record. You can see in joint appendix at 20 You can see it from the fact that two women actually sued the employer who were employees about the different postings Yes, that was a year. It's seen. It's heavily trafficked doesn't answer the question heavily trafficked by home. And so was this in An area did you put evidence in the record? That's what I'm really asking Did you put evidence in the records that women were in this area? There is evidence in the record that women could come through this area. I dare you to be direct with your be responsive to Question your honor. There isn't anything in the record that says a certain woman definitely passed through this area and we knew about it But certainly it's the employers reasonable belief if you look at the ad trans case Basically the DC circuit tells employers you've got to have a zero tolerance policy and you've got to try and tamp down on this Kind of thing and that's simply what the employer was doing Does the record indicate whether there were any female employees who either do work overtime? sometimes or are in positions where overtime was Possible on this particular overtime board. The record is silent on that, but I also would Think I said that this particular Unit for which is overtime applied was all male it it appears from the record that it is all male and And but I would point out that the forest case from the First Circuit Basically says that it's a gender-specific epithet the Reeves case Says that even where a term like whores were used to refer to men That usage may not make the epithets any less offensive to women on account of gender if this Poster if this posting had been up for 48 hours if the employer hadn't detected it Originally anyone could have walked through there. There's no question. This is a mixed work workforce of male males and females It looks like I don't have that much Whether you properly raise this issue before the board In your entering brief you discuss The issue that is the relationship between this and the anti-harassment laws But they're they're in what they're in sections dealing with dealing with Defacement whether defacement constitutes protected activity and on the Atlantic steel factors Which is different argument that you're making here And I didn't see anywhere in the brief where you discuss this accommodation issue or cited all the cases Sorry, well, why is this issue properly raised? The standard is just to just put the board on adequate. Notice that this time. Okay, you think the board would have had Expressly argued in its original brief that this was foul language Especially the context of gender discrimination and the general counsel's contrary position would quote eliminate the company's ability to police the workplace Unquote and would cause quote serious tension unquote with quote the law in workplace standards and that's in joint appendix 114 through 115 and the employees violation in this case was described in the notice precisely as harassment and joint appendix 234 we don't think it's something that's required to do anything more Especially given the fact that the ALJ's decision here if you remember didn't get to Title 7 at all And in fact the general counsel didn't raise you argued title 7 to the ALJ in the brief that we argued that under the totality of Circumstances tests, for example, the this was offensive language and that's Did you or did you argue that as part of the Atlantic steel analysis or the totality of circumstances analysis the implications for EEO laws had to be factored in did you argue that to the ALJ? Well that was argued before the board when I did those quotes. I just made in terms of the ALJ Have you mentioned? Federal I didn't see the words II didn't see the acronym EEO or title 7 or right? There was a case There was a case made to the ALJ that this was foul and offensive language There was put in front of the ALJ the notice to employees saying that they violated the harassment policy And the last thing I could say just in terms of how the workplace regarded this Kevin Gaul, who's the Union? Committee grievance committee chairman who sees all the disciplines testifies in this case that it was never appropriate To put up this kind of posting in the workplace. So if basically this had been some acceptable form of conduct You would have expected him to testify. Oh this happened all the time. Well, that's the merits Right and and we did like the this court tells us in HGH We did put forth a motion for reconsideration that quite expressly reached issue and the board simply said well We already considered this Okay May it please the court Jared Cantor on behalf of the National Labor Relations Board the board would The court to enforce its order because Williams did not lose the protection of the act and that finding was reasonable and supported by substantial evidence Picking up where my brother at the bar left off the board would and as we do strongly pushes back on its argument That it's answering brief apprised the board of the argument It's making in front of this court that the boards should have in this case accommodated EEO title 7 state Anti-discriminations that that's a very specific When you're asking the board Just to essentially accommodate other statutes that that's a very specific Claim that they make very well in their belated motion for reconsideration. So they knew that argument But they did not flesh it out at the time that they should have In this similarly goes to the board's finding that this is a case about Discipline arising from the protected content of what? Mr. Williams did that this is not a defacement case And that goes once again to the notice that mr. Williams received that if what concerned them was defacement, it would say We are suspending you with the intention to discharge you because you defaced instead. It talks about your willful And her it is harassing conduct insulting and harassing conduct Using this what I would submit and essentially become a term of art within this shop So look at J 125 126. That's where they talk about What this is the word used here was exactly the same The functional equivalent of the words and this is they're telling the board for which we were just held liable Under state anti-discrimination laws for creating a hostile and abusive work environment That CEO law By a court in West Virginia, and if you rule against us here, we're not going to be able to Police foul language like that. How did that not put them on notice? We were honor I think that puts the board on notice in the sense of the analysis that it conducted as to the employers legitimate concerns here balance against the employees rights, but to say then that the board needs to Accommodate these statutes or rule them Well, I think the board and answers it in its analysis here when it looks at what this term meant in the shop What's not preserved is There well, first of all, they brief none of the Atlantic Steel analysis or the totality of the circumstances So the board's actual analysis under all the factors stands unchallenged in front of the court What's ten need is the The argument they're making that this words this decision needs to be denied enforcement and sent back because they asked the board at the appropriate time in place to reconfigure its jurisprudence to Accommodate essentially they're asking this court what the board is considering in its notice and invitation for briefs Reconceptualizing its entire jurisprudence in this area. There are concerns about Our address to any respondent comes before the board and asked for some enormous Rethinking of its jurisprudence it raises a specific issue Which may then trigger the boards doing that turns out the board's doing it anyway Well, yes, your honor But what their argument here was and certainly at this point as we as we argue has been waived They disputed the Atlantic Steel analysis. They disputed the totality of the circumstances analysis I mean what judge read to you is from their Alternative analysis under Atlantic Steel or totality of circumstances I think one right under but right they do it under both. They do it also on 122 correct your honor and respectfully submitted that is Would be insufficient to apprise the board that they're making this Argument when you when you read their motion for reconsideration and their brief to this court there Argument is you read it and you understand the argument that they are making the argument that they are making In their answering brief on those two is essentially Reiterating the fact part of their brief where they say we were really concerned about this. That's why we did what we did And the board doesn't just the board didn't say you didn't have a concern over The dissenting member of the board acknowledged this issue The dissenting member Emanuel his he departs from the board when he says this is a case about defacement Which is what the ALJ had said the board disagrees Does he also knows the concern about Yes, he gender or racial. Yes. He telegraphs that and then when the petition for reconsideration comes in he says I obviously disagree I would deny reconsideration because it doesn't argue anything when it makes the EDO point that it hadn't already argued Well, your honor respectfully was he wrong? That's not what he's they so they quote part of a member of manuals footnote from denying the motion for reconsideration His language they're basically just merely parrots. What's in the CFR subsection that governs motion for reconsideration That respondent has not raised any issue not previously considered We're showing extraordinary circumstance so he agrees that respondents brief Motion for reconsideration has not raised any issue not previously considered and as you said, they very well briefed in their motion for reconsideration The CEO issue. Well, how could he say that they hadn't raised any issue that wasn't previously considered if It hadn't previously been presented to them Well, you're under the second part his full footnote talks about agrees that the respondent has not raised any issue not previously considered or shown extraordinary circumstances warranting reconsideration and their motion for reconsideration had three bases number Manuals footnote when he raised it in his initial dissent. Did he was he making it up for them? No, I think he was telegraphing his joining the majority in In the General Motors notice an invitation over the dissent of McFerrin It's I view that more as a dialogue between the dissent and the majority which is very common in board decisions I have no idea just procedurally. Do they get to raise arguments that parties haven't? Yes, they do and under well-established board 10e jurisprudence, even if the board Suas Ponte raises an issue that does not preserve it for 10e because the party A party has to raise the objection There was a lot of discussion earlier about the record here and what the record to the extent Your honors are interested in it Otherwise, I'll yield back the balance of my time because I know it's been a long day for the panel Though when you look at these overtime, she can go a lot longer if we need to Don't worry about us. The record shows that indeed that this Subunit sub shop where mr Williams worked that the ALJ looks at all the names that were on the two sign-up sheets and he says well, there's three That have it could be you know, one gender or the other Terry Bobby and I think there was one more Mr. Williams testified when asked about the names on these overtime sheets One of which is his that everyone on there was all men and Judge Millett you were asking my brother at the bar about or he was talking about how long this was up in women passing back and forth What the record indicates is that mr. Williams wrote this at the end of his shift and then it was brought to management's attention And it was taken down essentially almost immediately because as the board talks about in its analysis This was scheduled 24 hours 24 hours isn't almost immediately. It was not up there for 24 hours It was due to but it was taken down once this was brought to management's attention There's no discussion in the record about when it was just brought to management's attention. I believe mr Williams in the record something one of the exhibits has his clock out time his punch-out time. I Believe it was three or four something mostly a normal working period day But it was brought to management management's attention and as the board focuses on in its analysis It was taken down Early, and it was already scheduled to go the next day. So it was not up there for a very long time There is nothing 48 hours would be a different issue. I Don't think that would I was just curious as to why they thought that Yeah, I'm gonna get if something's up there for such a fleeting time that no nobody but the supervisor who tears it down sees it That's one thing but that's not what was argued here. So I'm not sure why you get to use racial or gender epithets as long as it's Not for very long well, your honor, I think that goes to the board looking at the Atlantic steel and Looking at what their interest would be certainly as we point out in the footnote in our brief There's nothing wrong with them then taking this down. I mean the governing question in this case is what I think Am I reading the decision of the board, right? that every single day This could get written on the paper again No, your honor. I don't Continue I assume it's let's assume it's still ongoing. I don't know what's happening interim But assume if we're still an ongoing dispute, it wouldn't be a protected activity to keep writing it Well, your honor this dispute eventually was resolved on the party's end But yes, you're on No, I think that would go in that would affect the board's analysis where it talks about that. This was spontaneous. It was unplanned Misconduct and certainly it would start be spontaneous and unplanned when it was the natural outgrowth of an ongoing course of protected activity That seems a little odd. Well, no, your honor. I don't respectfully don't think so because It certainly did this did not come out of the blue. This was not him raising a personal gripe Out of the blue that this is part of the unit's Concerted action against the employers. That's how everyone referred to the sheep Huh, right it was common parlance that this that this signup was referred to by that phrase Yes, your honor As I said this had become Essentially a term of art. I would think that if he had went up there and written anything else to describe of art In the sense of people knew what this meant when people were referring to it ideally Yes, of course We would have wanted them to have picked the oppressive board some other term but in the context This is what employees were calling it the record dispute was going on. Let's say it went on for another year What what would stop an employee from writing at the time every time the sheet goes up an employee writes it? Well a couple things are under again that it would start weighing against that employee for the repeated part of the misconduct That's the balancing in Atlantic steel and certainly as it is not a repeated exercise of protective conduct Well, but you can eventually lose the protection of the act for it and as some of the board cases Repeat the epithet often enough you lose the protection Well, you may indeed your honor it really would depend and certainly as some of the cases discussed where it then becomes an issue of Of insubordination or repeated bad conduct at some of the cases where we have multiple instances of graffiti or vandalism Before and after an employee is warned that changes the calculus all of these cases are as in any Atlantic steel For loss of protection case, they're extremely fact-intensive Whether you're looking at the totality of the circumstances are going through each one of the factors It really is a fact-intensive type inquiry The board said the United Artists Theatre argument was raised That's on a different you that's what a categorical rule against defacement And the answer is the board has never held that employee graffiti is always unprotected And United Artists Theatre on which the judge relied did not establish such a per se rule. I'm on JA 133. Yes, sir But that is exactly what United Artists said Right, it's I find that the writing of graffiti on elevator walls and restroom walls and avoid is not protected activity And That's 127 of United Artists and on 128 my conclusion turns on the proposition of the writing of graffiti or defacing of employers property as a means of the Propagation of the slogan is under no circumstances a protected activity at the threshold section 7 yes, sir, so It seems like the board's distinction was just not accurate Respectfully your honor certainly the language that the judge used in this case is the judge's language The board adopted this decision. So this is the board's language. Yes, it is the board language of the board there I'm just asking you whether they were wrong when they said they might have other explanations like we've overtaken that was a one-off Other precedents overtaken it but the explanation they gave was we've never held That employee graffiti is always unprotected Yes, your honor and I think it's wrong No, the board is correct in saying it has never held that I think when you look at the language there the Judge as adopted by the board in United Artists was really focusing on the specific facts of that case indeed The first sentence that you read were the judge said at the threshold I find that the writing of graffiti on elevator walls and restroom walls of an employer is not I mean My conclusion turns on so this sounds like a holding the proposition that the writing of graffiti or defacing of employers property as a means of propagation of Slogans is under no circumstances a protected activity and therefore the threshold is contact associated from section 7 Yeah, that doesn't have any of those qualifications and that seems to be his sum-up conclusion holding that the board adopted Well two parts your honor one. I mean he capitalizes the employer. So once again, he's very much looking at What this employee did in that case and and indeed in that case? He found that the graffiti and there was in was unprotected The content of it because it was obscene and offensive and he also as the rest of that sentence makes clear He talks about it's clearly unlike misconduct occurring during the course of her title for this particular employer You could never have protected to face when a graffiti. That's your answer Well, your honor I think it would turn on the graffiti that was being written and certainly in this As the board emphasizes in a footnote in this decision when talking about this It says even to the extent that the judge here used this very strong language he also there are findings in here consistent with the loss of protection analysis and Where the judge also I'm thinking of the board's footnote and it's escaping that mean where the board made one other point that they were obscene and offensive Yes that he was looking at what was done there and I think Interpreting United Artists in this way then makes sense when you look at all of these board cases The company points to some we point to some it would be like any old verbal Atlantic Steel case where you can find a dozen cases where someone said something in a loud voice or aggressively or made aggressive movements and Just because in some cases That loud aggressive language was found To have cost you the protection of the act and just because in other cases you retain the protection of the act It's not that the board is departing from its jurisprudence and is all over the place. It's because these are really very fact-intensive Mr. Kennedy, would you agree that? Insofar as the cases arise from picket line The Board would Could reasonably be more tolerant than cases arising of epithets and so on or arising in a placid environment Yes, your honor I have never litigated a picket line misconduct case But certainly it's true when the board under Atlantic Steel looks at the location It does look whether this was in a supervisor's office whether it was out in the open One of the factors of Atlantic Steel looks at I mean, this is almost your quintessential old-school Industrial setting this is a little rolled aluminum manufacturing on the floor of the shop and and and that is the fact that the employers property was used For the epithet factor in or should that factor in? Well, I think it it certainly does your honor at page for the DNO which is page 135 of the 35 the appendix the board is part of its analysis and and it's also in discussion with the dissent on this says, you know We are considering the employees employers interest here. It has a property interest It had an interest in its overtime system and had an interest in not having this defaced But the question is as under all Atlantic Steel But they don't have an interest in not having their property used for racial or gender evidence Well, I mean I think that would be that's still captured within them That would be the employers interest of course in maintaining a harassment free Workplace just like it would be in a distinct interest and I don't want my property used for that those types of Distinctly offensive and harmful words Yes, your honor my general desire to control how my property is used and certainly the board is as they point as the company points out is considering your honors concerns as expressed in your concurrence a woman who walks by and sees that I'm not gonna know who wrote it up there. They're gonna see this official posting of the employer captioned This race we're under that maybe would be a slightly different case if those were the facts this case Was written at the top so it was like the caption of the sign-up sheet and they know that this is something the employer puts out the sign-up sheet I Mean certainly our distinct interest there. Well, your honor again That's why they were allowed to remove it and that's why it's certainly these Atlantic Steel cases are about misconduct Why would they like they were allowed to remove it because it was their sign-up sheet, correct? And Certainly, I know they focus a lot on the bulletin board aspect of this This could have just as easily been taped to a wall or a door So the bulletin board that they have here is the bulletin board itself the pin board is actually under glass So this then is taped on the outside of the glass because employees are expected to write on it What else There are photos I believe there were notices to employees they have there might have been an OSHA notice there I Believe there's testimony that they had one of their workplace policies up there. I don't know if they had an EEO Notice up there sounds like employees were expected to look at this bulletin board. Even if they weren't there to sign up for overtime Yeah Yeah, I mean certainly it I don't think we could dispute that this is where the employer posted notices to this group They were expected to look and learn about messages the employer wanted to communicate to them Yes, I mean again, this is a misconduct case This is this is the board is not saying here that there is a right to go and do this that this It's a question about whether this was so egregious as to be indefensible and as to justify Terminating. Mr. Williams and that brings in all the protections of well-established Labor law and the board's very reasoned analysis under Atlantic steel or totality none of which again the company I mean, it's hung its hat on the first part of the argument and I think very strategically decided not to fight The board on any of the loss of protection analysis. I see I am way over my time if there thank you Did mr. Johnson any time? You take one minute So I'll just cover a bunch of points Parkwood Right Parkwood is the waiver standard. That's if the respondent neglects to discuss everything I think it's a complete failure of the board's fact-finding to find that this is an provoked act or a spontaneous act this notice this policy dispute have been in effect for six months by the time This person engaged in a premeditated Make it a fact dispute now, right? The board found it was spontaneous and that's a fact-finding. So you're making a fight I'm making a universal camera point that if you look at the evidence in this case There is there are no facts that this was some sort of provoked or spontaneous act given the back policy They're not there's no legitimate Communicative value given the policies of NLRA and what the whole message was the two-word horror board Under you Emerson electric the board held employees can't even put graffiti on pieces of scrap metal That are going to be used. This is last point This is in essence a coerced speech case because I think the zero tolerance policy was up on the board if you look at joint appendix 40 through 41 48 and 240 through 244 and that policy said we as the employer do not approve of harassment We want harassing insulting conduct to stop this employee came up and replaced that message in effect with We think could you ever use the phrase coerced speech in an argument to the board or ALJ? No, I think that the it was argued in the context of the employer is the right to maintain discipline Thank you
judges: Tatel, Millett, Ginsburg